## BRYCE & CO. v. FOOT.

1. A valid assignment for the benefit of creditors has precedence over an attachment subsequently issued.

2. The law encourages an assignment by an insolvent debtor for the equal benefit of all his creditors; and such an assignment does not violate the law if it provides for an equal distribution among all the assignor's creditors "except debts already secured by mortgages, judgments, or other liens or encumbrances that the law shall require to be first paid."

3. The assignee under an assignment for the benefit of creditors, cannot move to have subsequent attachments set aside on the ground that the property so attached belongs to him, until his right has been established under issue joined on his return to the attachment under sections 255 and 256 of the Code.

4. Provisions for proper fees for preparing the assignment and for rents enforceable by distress are not preferences within the provision of the attachment laws.

5. Petition for rehearing refused—no material fact or principle involved having been overlooked.

Before WALLACE, J., Newberry, July, 1885.

The opinion sufficiently states the case.

*Messrs. Jones & Jones, Suber & Caldwell, Geo. S. Mower, James Y. Culbreath,* and *J. N. Nathans,* for appellants.

*Messrs. Moorman & Simkins,* contra.

September 15, 1886.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN.    On February 19, 1885, Michael Foot, the defendant, executed an assignment of all his property, consisting of lands, goods and merchandise, fixtures, bills, bonds, notes, &c., for the benefit of his creditors.    He named as his assignee his son, Mordecai Foot, who was directed to sell the property, and, after paying the proper fees, costs, and commissions, and all rents, taxes, and assessments due thereon, to apply the proceeds to the extinguishment of all his just debts, "and if such remainder shall be insufficient to pay said debts in full, then to apply the same so far as sufficient to the payment, first, to any debts that may be already secured by pledges, mortgages, judgments, or any other lien or encumbrance upon said property, or any part thereof, that the law shall require to be first paid, and then to the payment of all other debts *pro rata,* which the law does not require to be first paid," &c.    The assignment was delivered and also the assignee put into possession of the property.

On the same day (February 19), but some hours after, the plaintiffs, William Bryce & Co., and three other creditors of Michael Foot, severally issued writs of attachment and levied the property assigned as still belonging to the debtor, Michael Foot; on February 20, two other creditors also issued attachments; February 21, seven others; February 23, five others; February

24, one other; February 25, four others; February 27, two others; and on March 20, one other, making in all, twenty-six. The names of ·the different attaching creditors, and the amounts and nature of the claims, are all in the "Brief." The affidavits ·on which the attachments issued are very much the same, charging that the assignment was fraudulent and void, and stating, upon information and belief, certain grounds and sources of information, and especially that Michael Foot had some time previous to the execution of the assignment made fraudulent mortgages to Oberdorfer, Samuels, and Klettner, amounting in the aggregate to some $17,500; and that the said Foot was about to secrete a large sum of money from his creditors, &c. In a number of the cases the attachment bonds were payable to the clerk of the court, and in others to Michael Foot, the debtor.

The debtor, Michael Foot, his assignee, Mordecai Foot, and M. A. Carlisle, who had been elected agent of the creditors, made a motion before Judge Wallace to vacate and discharge the liens of all the attachments upon several grounds, which, for the purposes of this case, may be condensed into two: first, that when the attachments issued against Michael Foot, he had no interest in the property, the title to which had passed to the assignee, and he and the agent for creditors had the possession and rightful control of the same under the assignment, which conveyed all the interest of the debtor, much or little, and was regular and valid under the law; and second, that the said writs of attachment were issued upon insufficient affidavits, and were in other respects irregular; but if not, the facts stated were disproved and the writs were therefore improvidently issued, and were therefore void. Numerous affidavits upon these points, *pro* and *con*, were submitted, but the Circuit Judge did not consider it necessary to determine anything but the first point, as in his view that was conclusive. Upon that subject the judge held as follows: "There is no doubt in my mind that the assignment upon its face is a good and sufficient instrument as a deed of assignment, and that it operated to transfer the right of property to the assignee. It is in proof that the assignee was in possession when the liens were made. Upon this state of things it is clear that the assignee has the right to make the motion to vacate

the liens.    Section 263 of the Code is express upon the subject. The act of the general assembly (18 *Stat.*, 491) amends section 255 and leaves section 263 unaffected, which, among other things, enacts that 'any person who establishes a right to the property attached, may move to discharge the attachment, as in case of other provisional remedies.'    It is therefore adjudged, that the liens of attachments upon the property assigned by M. Foot be vacated and set aside," &c.

From this order the plaintiffs, the attaching creditors, appeal to this court upon the following exceptions:

"1. Because his honor erred in deciding and ordering that the liens of attachments upon the property assigned by M. Foot be vacated and set aside.

"2. Because his honor erred in deciding that the deed of assignment alleged to have been made by Michael Foot to Mordecai Foot was a good and sufficient instrument on its face as a deed of assignment.

"3. Because his honor erred in deciding that said alleged deed of assignment operated to transfer the right of property to the assignee.

"4. Because his honor erred in deciding that upon the execution of said alleged deed of assignment all leviable interest in the property immediately passed from M. Foot.

"5. Because his honor erred in deciding that the said alleged deed of assignment contained no preference whatsoever among the creditors of M. Foot, except as the law allows.

"6. Because his honor erred in holding that Mordecai Foot, as assignee under said alleged assignment, could make the motion to vacate the lien of the attachments.

"7. Because his honor erred in not deciding that Mordecai Foot, as assignee, and Milton A. Carlisle, as agent of creditors under the assignment, could not make the motion to vacate said attachments.

"8. Because his honor erred in not deciding that said alleged deed of assignment was void for fraud.

"9. Because his honor erred in not deciding that the liens of said attachments on the property embraced in said alleged deed of assignment should be sustained.

"10. Because his honor erred in deciding that said alleged deed of assignment embraced all of Michael Foot's property of all kinds."

As we understand it, the writ of attachment is a proceeding at law, and goes to secure a lien, in advance of the judgment to be recovered, on the property of the debtor. It is its very object to secure a preference as it gives priority according to date. It is a great privilege and is allowed only when certain acts of the debtor are made to appear, one of which is that he "has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, any of his property with intent to defraud creditors," &c. When this condition of things is shown by affidavit with that certainty and particularity required by the law, the process issues, which is not limited to the identical property, in reference to which the alleged offence has been or is about to be committed, viz., the property "assigned, disposed of, secreted," &c., but reaches to any and all of the property of the debtor. So that in every attachment two questions may arise, which must be kept separate and distinct: first, whether the property attached belongs to the debtor; and if so, second, whether the facts exist which authorize the writ to issue. If the debtor has no interest in the property, there is nothing to support the attachment. "If there is nothing on which it can operate, the attachment is at an end." *Chambers & Sadler* v. *McKee*, 1 *Hill*, 230. There is no doubt that a valid assignment for the benefit of creditors has precedence over an attachment subsequently issued. *West* v. *Tupper & Kimball*, 1 *Bail.*, 198.

In this case the Circuit Judge considered only the effect of the assignment upon the title of the property, and connected therewith the right of the assignee to make that question by motion; and, of course, that is the only question which is before this court in such manner as to be decided here. In the view of the Circuit Judge that he had a right to hear the motion and decide it on affidavits, we cannot say that he committed error in holding that the assignment is regular on its face, and contains no provision which is inhibited by the act of the legislature (Gen. Stat., § 2014) or makes it void. The law allows, indeed, in cases of insolvency encourages, such assignments for the benefit

of all the creditors of the debtor. The terms of this assignment were sufficient to carry all the property of the debtor of every nature and kind whatever, and the proceeds (after deducting the expenses of administration) were to be equally distributed "among all his creditors, except debts already secured by mortgages, judgments, or other liens or encumbrances that the law shall require to be first paid." We do not think, *prima facie*, it can be truly affirmed of a voluntary assignment of all a debtor's property for the benefit of all his creditors (legal liens taking precedence), that it is one of those "assignments" contemplated by the law as good ground for a writ of attachment, viz., "has assigned, disposed of, &c., or intends to assign his property with intent to defraud his creditors," &c. The assignee undoubtedly had *prima facie* title to the property for the benefit of all the creditors.

But the attaching creditors assail the assignment as void for fraud not apparent on the face of it; that the debtor refuses to deliver all his property, and that some of the property is covered by mortgages executed previously, which are without consideration, fraudulent, and void, the effect being to make the assignment itself void. It may be a question whether a voluntary assignment, fair and regular upon its face and in terms disposing of all the debtor's property for all his creditors, is necessarily made void by the fact (assuming it proved) that some of the property assigned is found to be covered by fraudulent mortgages previously executed. The assignment in its terms covers and transfers all the interest of the debtor in his property. If the previous mortgages are good and valid, the assignee takes subject to them ; if they are void, he takes the whole interest, and whether he takes one or the other, would not seem to affect the validity of the assignment itself, but rather to concern the administration of the assigned estate, and the manner of its distribution among the creditors. We could not say that a debtor, who had given a fraudulent mortgage on part of his property, should forever after be incapable of making a valid assignment for the benefit of all his creditors. We suppose that the *locus penitentiae* would still remain. It strikes us that it is possible for a voluntary assignment for the benefit of all creditors to be valid, and at the same

time mortgages covering parts of the property so assigned be set aside as fraudulent, and the debtor required to produce and deliver all his property covered by the assignment. It was stated at the bar that there is an action pending to set aside not only the assignment, but the mortgages as well. The attaching creditors have an interest to set aside both the assignment and the mortgages; there may be, however, other creditors who, concurring as to the mortgages, have an interest to sustain the assignment. But as the facts of the case are complicated and it will have to go back to the Circuit, we make no ruling as to whether the previous execution of the mortgages and the conduct of the debtor, Foot, in withholding the assigned property as alleged, should or should not make the assignment itself null and void.

The most difficult question still remains. The Circuit Judge held that the assignment, being good and sufficient on its face, was valid to transfer the title of the property to the assignee, and therefore, although he was not a party in the attachments, the assignee had the right to make the motion to vacate the liens under section 263 of the Code, which, among other things, provides that "any person who establishes a right to the property attached, may move to discharge the attachment as in case of other provisional remedy," &c. Was this error? Was the mere *prima facie* right to the property shown by the assignment, that "established right" referred to in the aforesaid section of the code, as giving to the assignee the right to move, upon affidavits merely, to discharge the attachments? The attaching creditors deny it, and say that was assuming the very point in contention, viz., the validity of the assignment, which they deny.

It was held by this court, in the cases of *Copeland* v. *P. & A. Life Insurance Company*, 17 *S. C.*, 116, and *Metts* v. *Same*, *Ibid.*, 120, that "the assignee under a deed of assignment cannot by motion before judgment vacate an assignment levied upon the assigned property, he being no party to the action." This was not on the ground that the assignee may not show by proper proceedings that the title of the property is in him for the benefit of creditors, but because the judge, upon mere affidavits, could not determine such an issue, involving the title to land, &c. In the case of Metts, *supra*, the Chief Justice said: "The attach-

ment can operate only on the interest of the debtor. It cannot divest any lien encumbrance or title of a third party or affect his interest in any way. If the debtor has no interest, the proceeding is futile and it will be fruitless. The creditor levies on the property of persons other than the debtor at his peril. * * * If the rights of Blakey (assignee) have been interfered with, he has his remedy, and the courts will afford him full protection through some proceeding more appropriate than the one he has adopted. His motion involves the title to real property, which ordinarily should be determined by a jury," &c. When these cases were decided (1881) section 263 of the Code, cited by the judge, was on the statute book, but it was not then considered to give to the judge the right to hear and determine the question of the validity of the assignment upon mere affidavits.

In order possibly to supply this seeming *casus omissus* in the law, sections 255 and 256 of the Code were amended in 1883, so as to read as follows: "If the person in whose possession such property shall be attached shall appear at the return of the writ and file his answer thereto, and deny the possession or control of any property belonging to the defendant, or claim the money, lands, goods and chattels, &c., as creditor in possession, or in his own right, or in the right of some third person, or if any part of the said property be claimed by any other person than such defendant, then, if the plaintiff be satisfied therewith, the party in possession shall be dismissed and the plaintiff pay the cost of his action. But if the plaintiff shall contest the said return or the claim of said third person, an issue shall be made up under the direction of the judge to try the question, and the party that shall prevail in said issue shall recover the costs," &c. It seems to us, that under our decided cases, the assignee could only be heard to set up his title to the property assigned for the benefit of all the creditors, under and by virtue of this amendment to the code. If we construe it as directing the manner in which the title to the assigned property shall be determined, and section 263 of the Code as giving to one who has already "established" his right to the property, permission to "move to discharge the attachment," we will give effect to the manifest intention of the legislature, and at the same time reconcile both provisions, and

maintain the consistency of the decisions of this court. We think the Circuit Judge ought to have ordered an issue under the amendment of the code above cited, to try the question of the validity of the assignment.

The judgment of this court is, that the order of the Circuit Court be set aside without prejudice; that the case be remanded, with permission to the assignee to make "return" to the attachments, claiming the property as assignee for creditors, in order that "an issue" may be made up to try the question of the validity of the assignment of M. Foot, in accordance with the act of 1883.

In this case, the plaintiffs filed a petition for a rehearing, upon the ground that the alleged preference in the assignment for counsel fees and rents had been overlooked by this court.

December 10, 1886. The following order was passed

PER CURIAM. We have carefully considered this petition for a rehearing. We think there was no such omission as suggested. The Circuit Judge held "that the assignment upon its face was a good and sufficient instrument as a deed, and that it operated to transfer the right of property to the assignee." So far as the form of the assignment is concerned, this court concurred with the Circuit Court, holding as follows: "In the view of the Circuit Judge that he had a right to hear the motion and decide it on affidavits, we cannot say that he committed error in holding that the assignment is regular on its face and contains no provision which is inhibited by the act of the legislature (section 2014, General Statutes) or makes it void," &c.

The court did not consider that either the "proper fees for preparing the assignment" in favor of creditors, or "rents" enforceable by distress, are such debts as come within the purview of the statute against preferences. There is nothing in the assignment which necessarily indicates rents not enforceable by distress.

As it does not appear that any material fact or principle involved was overlooked in the decision, there is no ground for a re-argument. The petition is dismissed.